Karen Lyn FRENCH, Nancy French,
& Kenneth French, Appellants,

v.

Marvin Leroy MOORE, Appellee.

No. 01–03–00445–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 12, 2004.

Robert Alan York, Holman & Keeling, P.C., Houston, TX, for Appellants.

Tammy Tran, Tammy Tran & Associates, David Tang, Houston, TX for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

JANE BLAND, Justice.

Appellants Karen Lyn French, Nancy French, and Kenneth French contend that a Harris County Court at Law lacked subject matter jurisdiction over this lawsuit, because the amount in controversy exceeds the $100,000 jurisdictional limit of that court. In the event jurisdiction exists, they challenge the legal sufficiency of the evidence supporting the trial court's judgment in favor of appellee Marvin Moore. We conclude that the trial court had jurisdiction, affirm in part, and reverse and render in part.

### The Facts

Kenneth and Nancy French are husband and wife. They have two daughters, Karen French and Sandra Boyd. Marvin Moore is Sandra Boyd's ex-husband. While Moore and Boyd were married, they encountered financial trouble. Kenneth, Nancy, and Karen French loaned the couple money to assist them with the operation of their business, Moore Moving Systems, and to assist them with their personal expenses. Moore "wanted to expand [the business] and get it out of [their] house." Kenneth and Nancy French owned two pieces of real property located at 17847 Huffsmith Kohrville ("the warehouse property") and 18304 Huffs-

mith Kohrville ("the office property"), and personal property located on those properties. According to Moore, he entered into a partnership with Kenneth and Nancy French. Their oral agreement provided that Kenneth and Nancy would contribute cash and their warehouse and office property to the partnership. Moore in turn would improve and maintain the warehouse and office property, and pay the utilities and taxes assessed on it. Moore testified at trial that he built a fence, a parking lot, and the "main shell" of the building on the warehouse property, and that the Frenches agreed to "finish out everything." Moore completed the improvements in the spring of 1999. Moore testified that the parties also agreed to expand Moore Moving by developing the Frenches' office property. Thereafter, Moore and Boyd sold their home and invested some of the proceeds of that sale into the office property. The couple divorced in July 2002.

Approximately one week after the divorce became final, the Frenches demanded Moore's key to the warehouse property, and informed him that he had no right to enter the property.[1] Two police officers escorted Moore from the property. Within several days, Moore sued Nancy and Kenneth French in the Harris County Court at Law, alleging wrongful eviction, breach of contract, conversion, and fraud—all in connection with the warehouse property. Moore also sued his ex-sister-in-law, Karen French, for conversion and unjust enrichment, in a dispute over ownership of a tractor. Kenneth and Nancy French countered by filing two forcible entry and detainer actions in the justice court, asking the court to remove Moore from the office

---

1. As part of Moore and Boyd's divorce decree, Moore retained ownership of Moore Moving Systems, and all rights arising out of or in connection with the operation of the business.

and warehouse property. The justice court awarded possession of both properties to Kenneth and Nancy French.

The parties agreed to consolidate Moore's appeal of the justice court rulings with Moore's county court at law suit. Moore then filed a supplemental petition, in which he added damages for claims arising out of the office property. The Frenches counterclaimed, asserting causes of action for breach of contract, conversion, quantum meruit, unjust enrichment, and negligence.

The parties waived their right to a jury, and proceeded to a bench trial. The trial court found no partnership existed, but found against Kenneth and Nancy French on Moore's unjust enrichment and wrongful eviction claims. It awarded Moore damages of $60,000 for unjust enrichment and $5,000 for wrongful eviction. The trial court included another $45,000 for Moore in attorney's fees. In addition, the trial court found Karen French liable to Moore for conversion, and awarded $18,000 in damages. Finally, the trial court found Moore liable to Kenneth French on his counterclaim, and awarded French $6,000 in damages for unjust enrichment. The trial court also determined that Kenneth French owned a trailer, and that Karen French owned an Agmeier Box Scrapper and a Modern Stand Post Digger. It thus ordered Moore to transfer possession of that personal property to Kenneth and Karen French, respectively. The trial court ordered Moore to relinquish possession of the warehouse and office properties, and to release all *lis pendens* he had filed on the property. It denied all other relief, including the Frenches' claim for attorney's fees.

### Jurisdiction and the Amount in Controversy

The Frenches contend that the county court at law lacked jurisdiction over this case because the amount in controversy for Moore's aggregate claims against Kenneth and Nancy French exceeds the trial court's $100,000 jurisdictional limit. In resolving this issue, we consider (1) the standard of review for a challenge to jurisdiction based upon the amount in controversy; (2) the rules to apply in determining the amount in controversy; and (3) the application of those rules to the facts of this case.

*Standard of Review*

■ A court must have subject matter jurisdiction to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex.1993). The Texas Constitution and legislative enactments confer subject matter jurisdiction, combined with the existence of the facts necessary for a court to exercise jurisdiction. *Lee v. El Paso County*, 965 S.W.2d 668, 671 (Tex.App.-El Paso 1998, pet. denied). The determination as to whether jurisdiction exists is a question of law, and we review it *de novo*. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). The allegations in the plaintiff's petition ordinarily establish the amount in controversy for a jurisdictional analysis. *Continental Coffee Products Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex.1996). *See also Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex.2000) (jurisdictional challenges based upon amount in controversy "must ordinarily be decided solely on the pleadings"). We presume that a trial court has jurisdiction unless the absence of jurisdiction affirmatively appears on the face of the petition. *Lee*, 965 S.W.2d at 671. The plaintiff's pleadings are determinative of the amount in controversy, unless the defendant alleges that the amount pleaded was merely a sham to wrongfully obtain jurisdiction. *Bland*, 34 S.W.3d at 554. If, however, a litigant fails to state

an amount in controversy in its petition for recovery, the trial court is not thereby deprived of jurisdiction. *Peek v. Equip. Serv. Co.*, 779 S.W.2d 802, 804 (Tex.1989). Rather, a litigant may prove jurisdiction at trial. *Peek*, 779 S.W.2d at 804.

◼ When deciding a plea to the jurisdiction, the trial court must consider evidence relevant to the jurisdictional issue if that evidence is necessary to resolve the jurisdictional question, and it has discretion in determining whether the jurisdictional issue can be resolved in a preliminary hearing, or instead requires fuller development of the merits of the case. *Id.* at 554–55. As the trial court considered evidence in finding that it had jurisdiction, and served as the finder of fact in the bench trial of this case, we review the facts in a light favorable to the trial court's judgment. *See Tex. Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004) (holding that a trial court can consider evidence in connection with a jurisdictional inquiry and that the fact-finder is to resolve fact issues with regard to jurisdiction).

*Rules for Determining the Amount in Controversy*

Sections 25.0003 and 25.1032 of the Texas Government Code grant jurisdiction to statutory county courts and to the Harris County Civil Courts at Law. *See* Tex. Gov't Code Ann. § 25.0003 (Vernon 2004); Tex. Gov't Code Ann. § 25.1032 (Vernon 2004). *See also Cazarez*, 937 S.W.2d at 447–49. The jurisdictional limit of the Harris County Civil Courts at Law is more than $500 but less than $100,000, excluding interest, statutory or punitive damages, penalties,

attorney's fees, and costs. Tex. Gov't Code Ann. § 25.0003(c)(1) (Vernon 2004); Tex. Gov't Code Ann. § 25.1032(a) (Vernon 2004). *See also Smith v. Clary Corp.*, 917 S.W.2d 796, 798 (Tex.1996) (stating general jurisdictional rule, and noting "many exceptions" exist).

◼ The Texas Supreme Court and the various courts of appeals have developed a framework for assessing the "amount in controversy" for jurisdictional purposes. First, if one plaintiff asserts multiple claims against only one defendant, the amounts of each separate claim are aggregated to determine the amount in controversy. *See Tejas Toyota, Inc. v. Griffin*, 587 S.W.2d 775, 776 (Tex.Civ.App.-Waco 1979, writ ref'd n.r.e.) (counter-plaintiff asserted DTPA claim and claims for damage to credit reputation, loss of use of automobile, and attorney fees against counter-defendant; amount of each claim aggregated and exceeded jurisdictional limits of county court). Second, if a plaintiff asserts a single claim through alternative theories of recovery, for the purpose of determining jurisdiction, the amount in controversy is determined by looking to the theory that would yield the largest award. *See Lucey v. Southeast Tex. Emergency Physicians Assoc.*, 802 S.W.2d 300, 302 (Tex.App.-El Paso 1990, writ denied). Third, if one plaintiff asserts separate, independent and distinct claims against multiple defendants, the claims asserted against each defendant are judged separately, and must independently lie within the jurisdictional parameters of the court. *Borrego v. del Palacio*, 445 S.W.2d 620, 622 (Tex.Civ.App.-El Paso 1969, no writ).[2] Fourth, a counterclaim, whether

2. *Borrego* involved an agreement between four members of a musical band, wherein del Palacio, one of the band members, agreed to purchase a saxophone, trombone, electric guitar, and amplifier, and the three defendants

agreed to remain members of the musical band until they paid for the instruments. *Borrego*, 445 S.W.2d at 622. After the three band members repaid del Palacio, he agreed to convey the instruments to his fellow band

permissive or compulsory, must be within the trial court's jurisdictional limits, and the trial court should dismiss a counterclaim if it exceeds the trial court's maximum jurisdictional limit. *Smith v. Clary Corp.*, 917 S.W.2d 796, 798 (Tex.1996); *Kitchen Designs, Inc. v. Wood*, 584 S.W.2d 305, 307 (Tex.Civ.App.-Texarkana 1979, writ ref'd n.r.e.). Fifth, if a plaintiff's pleadings seek an amount within the trial court's jurisdictional limits, subsequent amendments increasing the amount in controversy above the trial court's jurisdictional limit do not divest the trial court of jurisdiction, but only if the increase is due to the passage of time. *Flynt v. Garcia*, 587 S.W.2d 109, 110 (Tex.1979). Sixth, claims in an amended petition for additional damages—not due to the passage of time—are included in the amount in controversy. *Smith*, 917 S.W.2d at 798 n. 1; *Crumpton v. Stevens*, 936 S.W.2d 473, 477 (Tex.App.-Fort Worth 1996, no writ).

 Finally, if a litigant alleges an amount of damages exceeding the trial court's jurisdictional limit, and the alleged damages are liquidated and non-severable, the party may not amend its pleadings to reduce its liquidated damage claim to an amount within the trial court's jurisdictional limits. *Smith Detective Agency v. Stanley Smith Security, Inc.*, 938 S.W.2d 743, 747 (Tex.App.-Dallas 1996, writ denied); *see also Failing v. Equity Management Corp.*, 674 S.W.2d 906, 908–09 (Tex.App.-Houston [1st Dist.] 1984, no writ). A litigant may, however, reduce its unliquidated claim for damages to an amount within the

trial court's jurisdictional limit if that party pleads in good faith. *Smith Detective Agency*, 938 S.W.2d at 747; *see also Failing*, 674 S.W.2d at 908–09 (plaintiff in court of limited jurisdiction may amend claim by entirely abandoning any severable item to reduce claim to amount within jurisdiction of court, but cannot amend to confer jurisdiction by waiving portion of severable claim or by arbitrarily reducing alleged value of property or services to reduce claim to amount within court's jurisdiction); *Isbell v. Kenyon–Warner Dredging Co.*, 113 Tex. 528, 261 S.W. 762, 763 (1924) (trial court properly dismissed claim added after suit filed that increased amount in controversy above trial court's jurisdictional limit, and retained initial claim).

## The Application of the Amount in Controversy Rules

 Moore's original petition alleges an unliquidated, unspecified amount of damages for the warehouse property against Kenneth and Nancy French collectively. It separately alleges damages against Karen French for the conversion of a tractor. Moore's supplemental petition alleges additional unspecified damages for claims arising out of the office property. In his original petition, Moore further alleges that the damages he seeks for his wrongful eviction and fraud claims were *"within* the court's jurisdictional limits" and that the damages he seeks for his breach of contract, unjust enrichment, and

members. *Id.* The defendants quit the band and retained possession of the instruments. *Id.* Del Palacio asserted three claims in county court seeking $435.00 from the defendant in possession of the saxophone or return of the instrument, $355.72 from the defendant in possession of the trombone or return of the instrument, and $607.00 from the defendant in possession of the electric guitar and amplifier or return of the instrument and amplifier.

*Id.* The three defendants contended that the county court lacked jurisdiction because del Palacio's claims, when aggregated, exceeded the county court's upper jurisdictional limit of $1,000. The court of appeals rejected this argument, holding that del Palacio asserted three separate and independent joinable claims and that because each claim fell within the jurisdictional limit of the county court, it had jurisdiction to adjudicate the dispute. *Id.*

conversion claims "exceeded the court's *minimum* jurisdictional limits." (Emphasis added). Moore did not specifically allege that his aggregate claims against Nancy and Kenneth French were less than $100,000. Moore later amended his petition to seek further unliquidated damages against Kenneth and Nancy French for the office property. The Frenches did not specially except to either petition to seek clarification of the amount in controversy, nor did they allege that Moore's representation that his claims fell within the jurisdictional limits was a sham.

At trial, Moore offered testimony that, as of the date he filed his original petition, his damages were at least $103,000. Moore also testified that the damages for both the warehouse and office properties ranged anywhere from $103,000 to $200,000. Moore further testified that he spent "about $60,000.00" on improvements to the warehouse property, and "about [$]70,000" on the office property. Moore asked the court to "dissolve the partnership and distribute the proceeds from the sale of the properties." Moore quantified the value of the assets held by the partnership as follows:

> From the property, roughly thirty-four thousand, net; and, basically, it would be twenty percent, which would be $70,000.00 to them and [$]80,000.00 to them, approximately; so that would leave roughly two hundred thousand, plus attorney fees.

Moore also claimed that if no partnership agreement existed, then he had "receipts showing [$]133,000.00." Moore agreed on cross-examination that he sought partnership damages in the amount of $200,000, and that no change in circumstances had occurred between the date of trial and the month that he filed suit.

After hearing Moore's testimony, the trial judge inquired whether the court had jurisdiction. He asked Moore's counsel to address the jurisdictional issue. Moore again testified that, although he did not know the liquidated amount of damages that he sought on the date he filed suit, the amount that he initially sought was "about" $103,000. Moore testified, however, that at the time he filed suit, he did not have a liquidated number as to the damages he sought.

Before the evidence closed, Moore's attorney made the following announcement:

> Judge, at this time the Plaintiff is going *to amend the pleadings to take out the dissolution of the partnership and the claims made for the greater amounts and are going back to the original petition as it was filed,* which would then come well within the jurisdictional limits of the Court. I can demonstrate that real quickly by the original petition and the testimony.

(Emphasis added).[3]

After counsel's trial amendment, Moore testified that when he filed his original petition, he sought $5,000 for wrongful eviction, and $60,000 for his claims related

---

**3.** The Frenches raised no objection to the pleading amendment. In a later hearing, the trial court acknowledged the abandonment of these claims. The court never signed an order of dismissal or severance, but at one point characterized it as a "severance" and at another point characterized it as a "dismissal." As counsel had announced a pleading amendment during trial, the effect is an abandonment of severable claims, not a severance or a dismissal. *See Failing,* 674 S.W.2d at 908—09 (allowing post-verdict, pre-judgment trial amendment to abandon severable claim and reduce the remaining claims to an amount within the trial court's jurisdictional limits). In *Failing,* our Court noted that judicial economy and the avoidance of repetitious suits favor allowing the amendment of pleadings to conform to jurisdictional requirements, if such amendment is possible. *Id.* at 909.

to the warehouse property. Moore specifically testified that the $103,000 figure consisted of "two components"—the warehouse property, which represented "roughly" $60,000—and the office property, which represented "roughly 20, 40,-000.00." The office property dispute arose, however, in Moore's supplemental petition. Moore also testified that he sought separate damages in the amount of $18,000 for conversion of a tractor against Karen French, and that he could not quantify the amount of other damages that he sought for conversion. At a second hearing on jurisdiction, the Frenches and Moore agreed upon a stipulation of evidence "as to what the amount in controversy was at the time of filing." The agreed stipulation reads: "the Court's understanding is that the total for actual damages the Plaintiffs are seeking did not have value in excess of $99,000 on the date of filing." Based upon the evidence it received, including the stipulation, the trial court concluded that it had jurisdiction to hear the case and enter judgment.

On appeal, the Frenches contend that the trial court lacked jurisdiction, maintaining that parties may not confer jurisdiction by agreement if no jurisdiction exists. Moore responds that, in context, his trial testimony referred to an aggregate amount in controversy of all parties and all claims, including claims in his amended petition he later abandoned, and his independent claims for conversion against co-defendant Karen French. Relying on *Gonzalez v. Sanchez*, 927 S.W.2d 218, 221–22 (Tex.App.-El Paso 1996, no writ), the Frenches reply that, by accepting the stipulation, the trial court impermissibly allowed the parties to "fix" the jurisdictional problem.

We conclude that *Gonzalez* is inapplicable here. In that case, Gonzalez failed to timely perfect an appeal, and the trial court lost its jurisdiction. Gonzalez then contended that the parties had agreed to extend the time for which her motion for new trial would be overruled by operation of law, in order to deem the appeal timely perfected. *Gonzalez*, 927 S.W.2d at 219–20. Unlike *Gonzalez*, the parties in this case did not attempt to resurrect jurisdiction in the trial court with a stipulation of law, after it had been lost by operation of law. Rather, in this case, the parties submitted agreed evidence as to certain facts. Based upon those facts, the trial court determined that it had jurisdiction. It is true that, if a trial court lacks jurisdiction, it cannot be conferred through an agreement of the parties. *Gonzalez*, 927 S.W.2d at 221–22; *Kirk v. Head*, 137 Tex. 44, 152 S.W.2d 726, 728–29 (1941). It is also true, however, that "where potential jurisdiction is dependent on the existence of facts, the litigating parties to a cause can agree on the jurisdictional facts; and from such agreed facts the court can determine the question of jurisdiction." *Head*, 137 Tex. 44, 152 S.W.2d at 728–29. Because the parties in this case agreed on certain facts, and based upon those facts, the trial court determined it had jurisdiction, we conclude that the county court at law properly determined that it had jurisdiction over this lawsuit. *See id.; see also Houston Lighting & Power Co. v. City of Wharton*, 101 S.W.3d 633, 641 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (providing stipulation conclusive on issue addressed, and parties estopped from claiming contrary).[4]

4. At oral argument, the Frenches maintained that the stipulation applied only to the claims Moore asserts in his original petition, and thus the totality of his claims exceeds $100,000. We disagree. The parties agreed upon the stipulated amount in controversy after Moore abandoned all of his claims other than "the original petition as it was filed."

### Sufficiency of the Evidence

The Frenches contend that no evidence, or alternatively, insufficient evidence, exists to support the trial court's award of damages. They further contend that the trial court's failure to award damages to Karen French, and attorneys' fees to the Frenches, is against the great weight and preponderance of the evidence.

■ A litigant who does not bear the burden of proof at trial must show that no evidence supports the contested finding to complain of legal insufficiency. *Beard v. Beard*, 49 S.W.3d 40, 55 (Tex.App.-Waco 2001, pet. denied). In deciding a legal insufficiency challenge, we view the evidence in a light that tends to support the disputed finding and disregard evidence and inferences to the contrary. *Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex.2003). If more than a scintilla of evidence supports the challenged finding, the no-evidence challenge fails. *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 588 (Tex.1999). When attacking an adverse finding on an issue for which one bears the burden of proof, the complaining party must demonstrate that the evidence conclusively establishes, as a matter of law, all facts in support of the issue (for rendition), or alternatively, that the adverse finding is against the great weight and preponderance of the evidence (for remand). *Vickery v. Vickery*, 999 S.W.2d 342, 375 (Tex. 1999); *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982).

### Moore's Claims

#### Unjust Enrichment

■ A plaintiff may recover under the equitable doctrine of unjust enrichment if a contemplated agreement is unenforceable, impossible, not fully performed, thwarted by mutual mistake, or void for other legal reasons. *Burlington Northern R. Co. v. Southwestern Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex.App.-Texarkana 1996) *aff'd*, 966 S.W.2d 467 (Tex.1998); *City of Harker Heights v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 319 (Tex.App.-Austin 1992, no writ). Unjust enrichment is not, however, a proper remedy merely because it "might appear expedient or generally fair that some recompense be afforded for an unfortunate loss" to the claimant, or because the benefits to the person sought to be charged amount to a windfall. *Zapata Corp. v. Zapata Gulf Marine Corp.*, 986 S.W.2d 785, 788 (Tex.App.-Houston [1st Dist.] 1999, no pet.).

Nancy and Kenneth French contend that the evidence is legally insufficient to support the trial court's award of damages to Moore for unjust enrichment, because Moore severed his fraud claim at trial, and no evidence exists in the record that Nancy or Kenneth French put Moore under duress or attempted to take unfair advantage of him. They further contend that there is no evidence that Moore paid $60,000 for the benefit of Kenneth and Nancy French under circumstances indicating that he intended to be repaid. The Frenches allege that Moore in fact testified that the funds used to construct the warehouse were paid in part from a bank account owned by Nancy and Kenneth French.

Virginia Hynson testified that she served as the real estate agent for Moore and Boyd when they sold their residence located at 11218 Windpipe. She also served as the real estate agent for the French family when they listed the warehouse property and purchased the office property. Hynson testified that she met with Kenneth, Nancy, and Karen French, Sandra Boyd, and Moore for a "family

Thus, the parties' stipulation relates to the only claims remaining before the trial court.

meeting" regarding their plan to expand Moore Moving. Hynson testified that the family decided to sell the residence on Windpipe and to use some of the proceeds to "reimburse some money," and some of the proceeds to purchase acreage to expand Moore Moving. The family also decided to list the warehouse property, and, likewise, planned to invest some of the money realized upon the sale of that property into land for Moore Moving, and the remainder to reimburse family members who had invested in the business. They listed the warehouse property for $148,900, which, if realized, would enable them to accomplish their goals of investing in a larger piece of land, and reimbursing those family members who had invested in Moore Moving.

Moore testified that he entered into a partnership agreement with Kenneth and Nancy French, made improvements, maintained, and paid the utilities and taxes on the warehouse property. Moore built the "shell" of a building, a parking lot, and erected a fence on the warehouse property. Moore offered receipts for $60,000 that he spent on improvements to the warehouse property, admitted without objection, and testified that the Frenches helped him "finish out" the building on the warehouse property, which he completed in the spring of 1999. Moore testified that he agreed with Kenneth and Nancy French that the money he invested in the warehouse property would be refunded upon its sale, together with anything left after the Frenches had been paid back for their investment. Moore produced an insurance policy that he purchased for Moore Moving, listing it as a partnership, and testified that the insurance company informed him that the Frenches attempted to change the description of Moore Moving from a partnership.

Moore admitted at trial that some of the damages that he was seeking were paid from a checking account owned by Nancy and Kenneth French, but testified that the money in that account came from Moore Moving. Moore testified that Nancy and Kenneth French allowed Moore and Boyd to deposit money into their checking account. According to Moore, he and Boyd agreed to this arrangement, and frequently approached Nancy French for checks. Nancy French eventually authorized Boyd to sign Nancy French's name on checks drawn on that account. Moore testified that he and Boyd deposited $74,000 into the checking account owned by Kenneth and Nancy French, and explained, "I had to trust in them. If not, I would have never deposited a $74,000.00 check into an account that I could not sign on." Moore testified that he and Boyd contributed funds to the account, and used the funds to construct a warehouse at a cost of $60,000.

The trial court found, pre-judgment, as follows:

- Plaintiff and Defendants did NOT enter into an express or implied partnership.
- Defendants did not breach a FIDUCIARY duty to Plaintiff.
- Defendants did not fail to comply with a partnership agreement.
- Plaintiff is entitled to a quantum meruit recovery.
- Plaintiff is entitled to recover unjust enrichment damages in the amount of $60,000.00.

(Emphasis in original).[5] Viewing the evidence in a light that tends to support the

---

5. The trial court made these findings on December 12, 2002, before it rendered judgment. The trial court made other findings pertaining to the Frenches' forcible entry and detainer and Moore's wrongful eviction claims, Moore's conversion claim, and attor-

trial court's judgment, and disregarding evidence and inferences to the contrary, we conclude that more than a scintilla of evidence supports the trial court's finding and damage award of $60,000 to Moore under the doctrine of unjust enrichment. The evidence indicates that Moore invested $60,000 in the property, expecting that his expenditure would be refunded upon the sale of the warehouse property. Such evidence is legally sufficient to support the trial court's award. *See Canchola,* 121 S.W.3d at 739; *Sanchez,* 997 S.W.2d at 588.

### Wrongful Eviction

■ Section 93.002(g)(2) of the Texas Property Code allows a tenant to recover from a landlord "an amount equal to the sum of the tenant's actual damages, one month's rent or $500, whichever is greater, reasonable attorney's fees, and court costs, less any delinquent rents or other sums for which the tenant is liable to the landlord." TEX. PROP.CODE ANN. § 93.002(g) (Vernon 1995). The Frenches contend that "this court need not delve into the particulars of the damage models for wrongful eviction, because Moore failed to present any evidence at trial to support damages under this theory, other than his unsubstantiated statement that he was entitled to $5,000."

Moore testified at trial that he sought $5,000 in damages for wrongful eviction. He testified that the amount of damages he sought is based upon the fact that he was required to find another storage facility to store his "household contents" that he had stored at the warehouse property. The Frenches' attorneys neither cross-examined Moore on this issue, nor offered

controverting evidence regarding Moore's damages for wrongful eviction. Viewing this evidence in a light that supports the trial court's judgment and disregarding all evidence and inferences to the contrary, we conclude that more than a scintilla of evidence supports the trial court's damage award of $5,000 to Moore. *See Canchola,* 121 S.W.3d at 739; *Sanchez,* 997 S.W.2d at 588.

### Conversion

■ Karen French contends that Moore offered no evidence of conversion to support the trial court's finding that she converted a tractor that she removed from the warehouse property. She further contends that the testimony and documentary evidence at trial conclusively establish that she is the record owner of the tractor, and that Moore presented no evidence demonstrating that he had title or a superior right to possess the tractor.

■ In order to recover on a claim for conversion, a plaintiff must prove that: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; (3) the plaintiff made a demand for the property; and (4) the defendant refused to return the property. *Ojeda v. Wal–Mart Stores, Inc.,* 956 S.W.2d 704, 707 (Tex.App.-San Antonio 1997, pet. denied). A plaintiff is required to demand return of the property if the defendant legally obtained possession. *Presley v. Cooper,* 155 Tex. 168, 284 S.W.2d 138, 141 (1955).

ney's fees, in conjunction with its December 2002 findings. After the trial court rendered judgment, the Frenches requested findings of fact and conclusions of law. They filed a notice of past due findings of fact and conclusions of law on March 4, 2003. The trial

court did not make any findings of fact or conclusions of law after it entered judgment. The Frenches do not complain on appeal about the trial court's failure to enter post-judgment findings.

Moore does not dispute that Karen French is the record owner of the tractor, but instead contends that he had a superior right to possess it. Moore relies on his testimony that Karen French took the tractor from him after he had made loan payments on it. Moore admitted that he was not making payments on the tractor at the time of trial, and that payments were nonetheless due each month on the tractor. Karen French testified that she is the borrower on the $18,000 note, and she took possession of the tractor to keep track of it. She further explained, "When he left my mom's house, I would not know where he was. I wasn't assured that he was going to pay these loans, and I went ahead and asked him if I could use the tractor." Moore relinquished possession to French.

Although Moore argues in his brief that he had a superior right to possess the tractor, he has not directed us to any evidence in the record, nor have we found any, demonstrating that he had a superior right to possess the tractor at the time that Karen French took possession of it—indeed, she is the record owner and, as the borrower on the note, was responsible for payment. Absent any evidence of a lease or other agreement, Moore did not present legally sufficient evidence to support his conversion claim. In order to prevail on a claim for conversion, the aggrieved party must either own, possess, or have the right to immediate possession of the property alleged to have been converted. *Crutcher v. Continental Nat'l Bank*, 884 S.W.2d 884, 888 (Tex.App.-El Paso 1994, writ denied). *See also Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex.1971) (ownership of items not under liens carried with it right of possession absent evidence of con-

trary agreement between parties). Moore failed to meet any of these criteria. We therefore reverse the trial court's award of $18,000 for conversion damages against Karen French, and render judgment in her favor that Moore take nothing in his claim for conversion.

### Moore's Award of Attorney's Fees

■ Nancy and Kenneth French contend that the evidence presented to the trial court in support of Moore's award of $45,000 in attorney's fees is insufficient to support that award, and that the amount of the trial court's award is unreasonable as a matter of law. In support of their contention, they argue that because Moore is not entitled to recover attorney's fees on any of the theories upon which the trial court awarded damages, no basis exists for the trial court to award him attorney's fees.[6] The Frenches note that the trial in this case lasted less than one day, the parties conducted no discovery, and that the trial occurred less than three months after Moore filed suit. They also attack the trial court's award, because "despite the relatively simple nature of this case, almost every task in the case was attended by two, and often three, legal personnel."

Moore's attorney submitted invoices to the trial court for attorney's fees of almost $65,000. Moore's attorney, David Tang, testified that he reviewed the legal work performed in preparation of this case, that he has participated in trials in Harris County, Texas, and that he is familiar with the amount that attorneys in Harris County charge as a reasonable and necessary attorney's fee. Mr. Tang testified that, based upon the novelty of the issues in this

---

6. We have already determined that the trial court's award to Moore under Section 93.002 for wrongful eviction was supported by legally sufficient evidence. A tenant who prevails on a claim asserted under Section 93.002 of the

Texas Property Code may recover from the landlord, among other things, reasonable attorney's fees. TEX. PROP CODE ANN. § 93.002(g) (Vernon 1995).

case and the amount of work performed, a reasonable and necessary attorney's fee would be $45,000. When given the opportunity, the Frenches' attorney declined to cross-examine Mr. Tang.

A trial court, sitting as finder of fact, may award attorney's fees as a matter of law based upon an interested witness' testimony if it is accurate, clear, direct, and positive, and not contradicted by any other witnesses, other evidence, or attendant circumstances, "especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so." *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex.1990); *see also Collins v. Guinn*, 102 S.W.3d 825, 836 (Tex.App.-Texarkana 2003, pet. denied) ("What constitutes reasonable attorney's fees is a question of fact, but clear, direct, uncontroverted evidence of attorney's fees is taken as true as a matter of law, especially when the opposing party has not rebutted the evidence."). The trial court's award of attorney fees is supported by Mr. Tang's uncontroverted testimony. We therefore conclude that the evidence is sufficient to support the trial court's award of attorney's fees to Moore.[7]

**The Frenches' Claims**

Karen, Nancy, and Kenneth French asserted counter claims against Moore for breach of contract, conversion, quantum meruit, unjust enrichment, and negligence. Karen French contends that the county court at law's failure to award her damages in the amount of $13,647.85 is against the great weight and preponderance of the evidence, but seeks *rendition* of judgment, awarding her damages in that amount. Karen, Nancy, and Kenneth

French also contend that the trial court's failure to award them their attorney's fees is against the great weight and preponderance of the evidence, and seek *rendition* of judgment, awarding them attorney's fees in the amount of $15,000. The Frenches have briefed these issues as a challenge to the legal sufficiency of the evidence. Neither Karen, Nancy, or Kenneth French request that we remand this case to the trial court on the basis that the trial court's findings are against the great weight and preponderance of the evidence, as an alternative to rendition. We therefore construe their complaints as challenges to the legal sufficiency of the evidence. *See Anderson v. Gilbert*, 897 S.W.2d 783, 784-85 (Tex.1995) ("An appellate court should consider the parties' arguments supporting each point of error and not merely the wording of the points.").

When a party attacks the legal sufficiency of an adverse finding on an issue as to which he bore the burden of proof, he must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989); *Smith v. Central Freight Lines, Inc.*, 774 S.W.2d 411, 412 (Tex.App.-Houston [14th Dist.] 1989, writ denied). In reviewing this "matter of law" challenge, we examine the record for evidence that supports the challenged finding, while ignoring all evidence to the contrary. *See Sterner*, 767 S.W.2d at 690. If there is no evidence to support the finding, we will examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.*

*Claims Asserted by Karen French*

Moore does not dispute that Karen French borrowed $11,782.94 and gave him

---

7. *Alford v. Whaley*, 794 S.W.2d 920, 925 (Tex. App.-Houston [1st Dist.] 1990, no writ), on which the Frenches rely, is distinguishable, because in *Whaley*, the appealing party contested the amount of the attorney's fees and the evidence supporting it.

the loan proceeds. Nor does he dispute that she purchased a computer and fax machine for $1,864.91, and that he had possession of that equipment. Karen French contends that "in light of the uncontroverted testimony and documentary evidence, the trial court should have awarded total damages to Karen French of $13,647.85," and "[t]hat this Court should reverse the trial court's judgment and render judgment that Karen French recover actual damages against Moore in the amount of $13,647.85."

Moore testified that, in October 2000, Karen French borrowed $11,782.94 and gave him the proceeds of that loan. He also testified that he was not aware whether or not the loan had been fully repaid. When asked whether he "stopped giving her monthly payments that you and/or Sandra used to give her when y'all were together," Moore responded that he continued to make payments on that loan after he and Sandra Boyd had separated. When asked why he could not produce a canceled check to document that he made payments after he and Sandra had separated, Moore explained that he gave Karen French cash. Moore also acknowledged at trial that Karen French purchased a computer and fax machine for Moore Moving, but Moore testified that he paid her cash for that equipment five months after she purchased it. As further evidence that he paid for that equipment, Moore explained that he had the paperwork for that equipment, and that Karen French had retained possession of the paperwork for the equipment until after he had fully paid her for it.

As Moore disputed French's testimony, Karen French fails to meet her burden of showing that the evidence conclusively establishes that she was entitled to judgment in the amount of $11,782.94 regarding the loan proceeds, and $1,864.91 regarding the computer and fax machine.

Karen French further complains of the trial court's refusal to award her additional monetary damages.[8] She asserted claims against Moore for breach of contract, conversion, quantum meruit, unjust enrichment, and negligence. Karen French, however, has not specified which of these claims she contends that the evidence conclusively establishes as a matter of law, entitling her to rendition of judgment, or, alternatively, which claims the trial court failed to find in her favor against the great weight and preponderance of the evidence, entitling her to a new trial. We decline to address these issues, as Karen French failed to brief them. Tex.R.App. P. 38.1(h).

### Attorney's Fees

The Frenches contend that they are entitled to recover $15,000 for attorney's fees incurred in the prosecution and defense of this lawsuit, because of their successful prosecution of their forcible entry and detainer and unjust enrichment causes of action. They claim entitlement to all of the attorney's fees that they incurred in this lawsuit, because the claims in this case are so intertwined that their attorney was unable to segregate his attorney's fees between claims, or between prosecution and defense activities. Moore contends that the Frenches failed to present conclusive evidence in support of their claim for attorney's fees, and that they are therefore not entitled to rendition of judgment.

 In order to show the reasonableness and necessity of attorney fees, the party seeking attorney fees must show that the fees were incurred (1) while suing

---

8. The trial court did not award Karen French monetary damages. The trial court determined that Karen French owned an Agmeier Box Scrapper and a Modern, Stand Post Digger and ordered that Moore relinquish possession of and return this property to her.

the party sought to be charged with the fees and (2) on a claim which allows recovery of such fees. *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10 (Tex.1991). A party seeking attorney fees has a duty to segregate nonrecoverable fees from recoverable fees, and to segregate the fees owed by different parties. *See id.* at 11. An exception to the duty to segregate arises when the attorney fees incurred are in connection with claims arising out of the same transaction, and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts. *Sterling,* 822 S.W.2d at 11. When causes of action involved in a suit are dependent upon the same set of facts or circumstances, and thus are "intertwined to the point of being inseparable," the party suing for attorney fees may recover the entire amount covering all claims. *Id.*

At trial, the Frenches' attorney testified that the claims in this case are intertwined, and he thus could not segregate his fees between claims, nor between prosecution and defense activities. He also testified that the Frenches incurred attorney's fees in the amount of $15,000 through trial. In support of their contention that they are entitled to rendition of judgment in the amount of $15,000, the Frenches rely on the trial court's prejudgment findings, which state that they are entitled to attorney's fees incurred in the prosecution of their two forcible entry and detainer actions, and *Caldwell & Hurst v. Myers,* 714 S.W.2d 63, 65 (Tex. App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.). *Myers* allowed a recovery for attorney's fees based upon article 2226 of the Texas Revised Civil Statutes, recodified as Chapter 38 of the Texas Civil Practice and Remedies Code. *See id.*

### Forcible Entry and Detainer

 In order to be eligible to recover attorney's fees in a eviction suit, a landlord is required to comply with the requirements of Section 24.006 of the Texas Property Code. *See* Tex. Prop.Code Ann. § 24.006 (Vernon 2000). One of the requirements of Section 24.006 is that the landlord must provide a tenant unlawfully in possession of the landlord's premises with a written demand to vacate the premises. The demanding party must send the demand by registered or certified mail, return receipt requested, at least 10 days before suit is filed. Tex. Prop.Code Ann. § 24.006(a) (Vernon 2000).

The Frenches filed their first forcible entry and detainer action, which sought to have Moore evicted from the office and warehouse properties, on July 18, 2002. They sent their demand that Moore vacate the properties on August 1, 2002. Because their demand did not comply with the requirements of Section 24.006 of the Texas Property Code, the Frenches have failed to conclusively establish that they are entitled to recover their attorney's fees incurred in the prosecution of the forcible entry and detainer causes of action.

### Unjust Enrichment

 In order to be eligible to recover attorney's fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, a claimant must comply with Section 38.002. Section 38.002 requires that:

(1) the claimant must be represented by an attorney;

(2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and

(3) payment for the amount owed must not have been tendered before the expiration of the 30th day after the claim is presented.

Tex. Civ. Pac. & Rem.Code Ann. § 38.002 (Vernon 1997). The Frenches have not directed us to evidence in the record dem-

onstrating that they complied with the procedural requirements of Section 38.002 of the Civil Practice and Remedies Code. *See Sterner,* 767 S.W.2d at 690; *Smith,* 774 S.W.2d at 412 (party who attacks legal sufficiency of adverse finding on an issue as to which he bore the burden of proof must demonstrate on appeal that evidence conclusively established all vital facts in support of issue). Because the Frenches have not demonstrated that they complied with the procedural requirements of Section 38.002 of the Texas Civil Practice and Remedies Code, the Frenches have failed to conclusively establish that they are entitled to recover their attorney's fees incurred in the prosecution of Kenneth Frenches' unjust enrichment claim.

### Conclusion

If the parties agree on facts, and from those agreed facts the trial court determines the legal question of jurisdiction, a party is estopped from asserting on appeal that the facts are different from those agreed to in the trial court. We conclude that the trial court had subject matter jurisdiction to decide this case. We further conclude that (1) the evidence is legally sufficient to support the trial court's findings with respect to Moore's claims for wrongful eviction, unjust enrichment, and attorney's fees; (2) Karen French has failed to conclusively establish that she is entitled to judgment as a matter of law in the amount of $13,647.85 with respect to her claims against Moore for breach of contract, conversion, quantum meruit, unjust enrichment, and negligence; and (3) the Frenches failed to conclusively establish that they were entitled to judgment as a matter of law on their claims for attorney's fees. Because Karen French is the record owner of the tractor, is responsible for the debt it secures, and Moore has not directed us to any evidence demonstrating that he had a "superior right" to possess the tractor at the time that Karen French took possession of it, we conclude that the evidence is legally insufficient to support the trial court's award of $18,000 to Moore against Karen French for conversion. We therefore reverse and render judgment that Moore take nothing on his conversion claim against Karen French, and affirm the trial court's judgment in all other respects.